

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

March 9, 1967

Hon. Ogden Bass
Criminal District Attorney
Brazoria County Courthouse
Angleton, Texas    77515

Dear Mr. Bass:

Opinion No. M-36

Re:  Eligibility of certain prop-
erty in the City of Freeport
for an urban renewal project
under Article 1269L-3, V.C.S.

You request our opinion as to whether a certain project is an eligible project under the Texas Urban Renewal Law, Article 1269L-3, Vernon's Civil Statutes. You advise that the City of Freeport has properly and legally adopted the provisions of said law, and that:

"1. The land involved is a part of the Velasco townsite, which was platted around 1900 and is now a part of the City of Freeport, Texas;

"2. The land involved is largely open;

"3. The platted area is in blocks measuring 304 feet by 270 feet, with interior lots of 25 feet and 27 foot exterior lots, and is platted in a grid system of streets ranging from 60 to 70 feet in width, which streets exist every 304 feet, intersectioning at every 270 feet;

"4. The ownership is widespread, with people owning the same residing all over the United States;

"5. The titles to the extent of at least 50% are defective because of void tax sales;

"6. The area is usually 60% to 70% delinquent in payment of county ad valorem taxes;

"7. It is impossible to develop the land because of the diversion of ownership of the separate 25 foot lots;

"8. The area has some open shell streets;

"9. The area is occupied, in part, by large electric transmission towers;

"10.  The area is grown up in weeds and brush;

"11.  The area is laced with open ditch drainage, and such ditches contain stagnant water infested by mosquitoes;

"12.  The area hinders the development of the City of Freeport by reason of the foregoing conditions and is the last storm protected area available for development of the City;

"13.  Because of a combination of the foregoing factors, the cost of collecting taxes for the county on the lots exceeds the amount recovered."

We will quote only those portions of the statute which appear pertinent to your inquiry.

Section 2 recites, in part, that:

". . .the prevention and elimination of slum and blighted areas is a matter of State policy and State concern in order that the State and its cities shall not continue to be endangered by areas which. . .while contributing little to the tax income of the State and its cities, consume an excessive portion of its revenues. . .; that by such prevention and elimination property values, freed from the depressing influence of blight, will be stabilized, and tax burdens will be distributed more equitably, and the financial and capital resources of the State, required for the prosperity of, and provision of necessary governmental services to, its people, will be strengthened;. . ."

Section 4 defines various terms.

Sub-section (i) defines "Blighted Area", in part, as an area:

". . .which. . .by reason of the predominance therein of defective or inadequate streets. . ., or by reason of the existence therein of insanitary, unhealthful or other hazardous conditions which endanger the public health, safety, morals or welfare of the inhabitants thereof and of the city,. . .or by reason of the existence therein of conditions which endanger. . .property by fire or from other causes, or by reason of the

existence therein of any combination of the hereinabove stated causes, factors or conditions, results in a condition in that area which substantially retards or arrests the provisions of a sound and healthful housing environment, or which thereby results in and constitutes an economic or social liability to the city, and is thus a menace, in its present condition and use, to the public health, safety, morals or public welfare of the city,. . ."

Sub-section (k) states, in part, that the term "Urban Renewal Activities" shall:

". . .whenever used in this act, include. . . 'rehabilitation or conservation' which shall be limited to clearance or rehabilitation measures or any combination thereof which might be required to prevent further deterioration of an area which is tending to become either a blighted or a slum area and shall specifically include:. . . (1)  acquisition of. . .(ii) land which is predominately (sic) open and which because of obsolete platting, diversity of ownership, deterioration of structures or of site improvements or otherwise, substantially impairs or arrests the sound growth of the community;. . ."

We do not find the term "Urban Renewal Activities" used in exactly such sequence anywhere else in the act.  Hence, to attribute meaning to the language, as we must under standard rules of statutory constrution, we must assume that the Legislature was speaking generally of activities connected with the urban renewal program.

Sub-section (j), in this connection defines "Urban Renewal Project", a term used often in the Act, as including:

". . .activities of a city. . .in an urban renewal area for the elimination and for the prevention of the development or spread of slums and blight,. . ."

Sub-section (t) defines "Conservation", a term used in Sub-section (k), supra, to mean the:

". . .preserving, protecting and keeping of an area which is susceptible to blight from succumbing to blight."

We take notice of the fact that the act, when read from its four corners, appears to include within the term "Blighted Area" not only land that is presently blighted but also land which, because of the existence of certain adverse conditions, is in danger of "succumbing to blight".

Section 5 requires the City Council, with approval of the electorate, to adopt a resolution finding that a slum or blighted area exists and that:

> ". . .the rehabilitation, conservation, or slum clearance and redevelopment, or a combination thereof, of such area or areas is necessary in the interest of public health, safety, morals or welfare of the residents of such city. . ."

Section 9 gives the city:

> ". . .all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this act, including the following powers. . .(b) To undertake and carry out urban renewal projects. . ."

Sub-section (j) of Section 9 gives the city authority:

> ". . .to close, vacate, plan or replan streets, roads, sidewalks, ways or other places; to plan or replan, zone or rezone any part of the city. . ."

Section 10a allows the city to relocate electric transmission lines at city expense.

Under the facts outlined in your request, the area in question constitutes in our opinion a "Blighted Area" as defined in Sub-section (1) of Section 4 of the Urban Renewal Law (Article 1269L-3, Vernon's Civil Statutes). Therefore, you are advised that the proposed Urban Renewal Project is an eligible project under the facts submitted in your request since such facts would constitute reasonable support by substantial evidence of the city's fact determination that conditions exist that are detrimental to the public health, safety, morals or welfare of the city. Davis v. City of Lubbock, 160 Tex. 38, 326 S.W.2d 699 (1959).

## SUMMARY

Under the stated facts, the proposed project of the City of Freeport is an eligible project under the Texas Urban Renewal Law.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by J. Arthur Sandlin
Assistant Attorney General
JAS:bp

APPROVED:

OPINION COMMITTEE

Hawthorne Phillips, Chairman
W. V. Geppert, Co-chairman
Houghton Brownlee
John Reeves
Dyer Moore
Pat Bailey

STAFF LEGAL ASSISTANT
A. J. Carubbi, Jr.